COLE, Judge.
This is a suit for the specific performance of a contract of sale. The issue presented is whether or not there has been a meeting of the minds concerning the thing to be sold so as to afford appellant the right to seek specific performance of the contract under La.Civil Code art. 2462.
The facts are as follows: On February 6, 1979, Mrs. Betty Wallace, wife of Charles Wallace, delivered a letter written by her husband to the Lafourche Parish School Board. The letter was addressed to the School Board and stated Wallace was offering an eight acre tract of land for the price of $250,000.[1] Wallace stated in the letter if the Board accepted his offer of the eight acre tract he would donate an adjoining two acre tract. The letter did not include a legal description of the land but referred to an “enclosed map.” [2]
*1330 The School Board met on February 7, 1979. A discussion concerning the selection of a site for an elementary school in Larose, Louisiana was held in an executive session. The board reconvened in an open session and a motion was made to “accept the offer of Charles T. Wallace in the amount of $250,000 for an 8-acre tract....” The motion was seconded and passed by a vote of eleven to four. Mrs. Wallace was present at the meeting and later obtained a copy of the minutes of the meeting. Pursuant to La.R.S. 43:143 the minutes were also published in the School Board’s official journal, the Thibodaux’s The Daily Comet on February 16, 1979.
On February 28, 1979, the Board met in special session to reconsider the action taken on selecting the site for the Larose school. A motion was made to rescind the action taken by the Board concerning the acceptance of the Wallace offer. District Attorney Francis Dugas presented a formal statement in which he advised that the resolution accepting the Wallace property was the product of an illegally constituted executive session. He stated he could not recommend the execution of the Wallace contract. Appellant then filed suit for specific performance.
The trial court rendered judgment in favor of the School Board and against Wallace. The court reasoned there had been only a preliminary motion toward forming a contract rather than a real acceptance of the offer, hence the promise to purchase was not enforceable.
Art. 2462 of the La.Civil Code provides the rule concerning the right to specific performance of a promise to sell an immovable. The article reads in part as follows:
“A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.”
The inquiry must always be whether or not there existed a reciprocal consent, i. e., a meeting of the minds, as to the thing which was to be sold. After carefully examining the record, we conclude we need not decide if there was an acceptance of the offer because we find there was no meeting of the minds as to the thing to be sold. This lack of mutuality of consent is clearly evidenced by Charles Wallace’s testimony concerning the mineral rights.
The letter offering the eight acre tract contained no mention of the mineral rights. Unless specifically reserved, the mineral rights pass with the ownership of the land. La.Civ.Code art. 490, La.R.S. 31:5 and 6. Yet Mr. Wallace testified at trial this was not his intent.
“Q. There is nothing in writing between you and the school board as to whether or not you would convey title to the minerals to the property also, is that correct?
A. No. I really didn’t have any intention to sell the minerals with the property anyway. You don’t need minerals to build a school on.
Q. I beg your pardon?
A. You don’t need the mineral rights if you’re going to build a school on a piece of land.
Q. I understand that.
A. I didn’t own the mineral rights.”
Mr. Wallace continued to testify, stating he had not intended to include the mineral rights when he had previously donated the land. He felt that since no questions had been raised at the time of the donation, there was no need to be concerned about the mineral rights at the time of his offer to sell. (The record shows the 1973 act of donation does specify the minerals were not included.)
Regardless of Mr. Wallace’s intentions and his presumptions concerning the School *1331 Board’s knowledge of the exclusion of the mineral rights, the offer to sell the land is phrased in terms that include the mineral rights. Since Mr. Wallace does not own the mineral rights it is apparent he could not transfer them even if he so desired. There is obviously some confusion about “the thing” which is the object of the sale. The School Board accepted the unqualified offer to sell the land, so by law is entitled to the mineral rights. These facts lead us to the conclusion there was no reciprocal consent as to the thing being sold, therefore appellant is not entitled to specific performance of the contract. La.Civ.Code art. 2462.
For the foregoing reasons, the judgment of the trial court is affirmed. Appellant is to pay all costs.
AFFIRMED.

. The record shows Wallace had previously donated this land (or a tract similar to it) to the School Board in December 1973. The donation contained a five year reversionary period. Since the Board did not begin to use the land for school purposes by the end of the five year period, the land reverted back to Wallace as of January 1979.

. Testimony at trial was inconclusive as to whether or not the map was actually attached to the letter. The evidence showed several maps were delivered at a later date.